Todd R. BENSON, et al., Plaintiffs,

v.

The COUNTY OF ORANGE, et al., Defendants.

No. SACV 90–1964–GLT.

United States District Court, C.D. California.

April 6, 1992.

Michael J. Linfield, Dan Stormer, Hadsell & Stormer, Los Angeles, Cal., Paul W. Comiskey, Prisoners Rights Union, Sacramento, Cal., Richard P. Herman, Balboa Island, Cal., Charles E. McClung, Jr., McClung & Davis, Laguna Hills, Cal., Robert J. Cohen, Crystal C. Sims, Legal Aid Soc. of Orange County, Santa Ana, Cal., Paul Hoffman, ACLU Foundation of So. Cal., Los Angeles, Cal., for plaintiffs.

Terry C. Andrus, County Counsel, and James L. Turner, Deputy, Santa Ana, Cal., for defendants.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

TAYLOR, District Judge.

This case raises as its main issue the seldom-litigated topic of the constitutional adequacy of jail visiting times. The County has reduced visitation to two days a week at four of its five jails. The court holds that the new schedule does not violate any prohibition of the Constitution.

### I. BACKGROUND

Plaintiffs, prisoners in the Orange County jail system, filed this class action in 1990 against the County of Orange and its Sheriff, seeking various orders to provide constitutionally adequate conditions of confinement.

In May 1991, the court made several orders in this and the companion *Stewart v. Gates* case (No. CV 75–3075), and ordered that each of the then-current orders entered in *Stewart* apply to this case as well. At present, all of those orders remain in effect, until otherwise modified or terminated by this court.

Trial is set in this matter for October 1992.

In March 1992, plaintiffs applied to the court for a temporary restraining order and preliminary injunction to prevent an announced reduction of visiting times in the County's jails to two days a week, and to provide easier access to inmates by plaintiffs' counsel's staff. The court denied the temporary restraining order, and set the preliminary injunction request for hearing.

After a hearing on the matter, the court makes this order.

### II. DISCUSSION

In the companion *Stewart* case, the court stated the principles that guide judicial review of jail administrators' actions:

On the one hand, this court has the obligation to protect the constitutional rights of prisoners to due process and equal protection of the laws, and to be free from cruel and unusual punishment. On the other hand, courts must be careful to refrain from imposing upon jail administrators their personal views as to how penal institutions should be operated and the conditions under which inmates should live.

*Stewart v. Gates,* 450 F.Supp. 583, 585 (C.D.Cal.1978).

Since this litigation began in 1975 through the companion *Stewart* case, the law in this area has become fairly clear. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807–08, 40 L.Ed.2d 224 (1974). However, the authority to make policy choices concerning prisons is not a proper

judicial function. *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979). *See also, Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

■ Courts play a very limited role in the administration of detention facilities. The Supreme Court has warned that the assessment of the need for a specific restriction is peculiarly within the province and professional expertise of corrections officials, and courts should ordinarily defer to their expert judgment unless there is a substantial showing the officers have exaggerated their response. *Wolfish,* 441 U.S. at 540–541, n. 23, 99 S.Ct. at 1875, n. 23. Prison administrators are to be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Wolfish,* 441 U.S. at 547, 99 S.Ct. at 1878; *Block v. Rutherford,* 468 U.S. 576, 584–585, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984). This deference requires that the court not freely substitute its judgment for that of officials who have made a considered choice. *Whitley v. Albers,* 475 U.S. 312, 321–322, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986); *Jordon v. Gardner,* 953 F.2d 1137, 1142–1143 (9th Cir.1992).

■ Ultimately, the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution. *Wolfish,* 441 U.S. at 562, 99 S.Ct. at 1878; *Jordon,* 953 F.2d at 1144.

This court has previously identified various constitutional violations, which are now the subject of court orders, and will be duly enforced. The question today is whether the visitation and access matters now before the court are also constitutional violations.

*1. Reduction of visiting times.*

■ It is well-established in the statutes, case authorities, and by common sense, that prisoners and their visitors benefit from as much visitation as is reasonably possible. Therefore, any announced intention to reduce jail visitation times may justifiably raise legitimate concerns that remaining visiting times will be more crowded, some visitors may be inconvenienced or deterred, longer waits may result, jail tensions may increase, and inmates may suffer greater anguish in being apart from family and friends.

However, the question before the court is not whether more visitations are desirable. The question is whether the proposed new visitation schedule is a constitutional violation. The court holds that it is not.

The new visitation schedule does not violate an existing order of the court. The two orders cited by plaintiffs' counsel, permitting visitation by unaccompanied minors and for prisoners in administrative segregation, are not impaired. Those visits can take place on the new schedule along with other visits. It has not been shown that they will be blocked.

California Penal Code § 2601(d) provides a prisoner's civil right "to have personal visits." The court is unable to agree with plaintiffs' contention that this statute mandates *daily* visitation, within the holding of *Youngblood v. Gates,* 200 Cal.App.3d 1302, 246 Cal.Rptr. 775 (1988). In *Youngblood,* the state trial court held invalid a Los Angeles city jail rule permitting no visitation, and entered an order permitting visitation each day. The appellate court affirmed, holding the visitation order was "balanced and reasonable." *Id.* at 1327, 246 Cal.Rptr. 775. The appellate court did *not* hold that § 2601(d) *requires* daily visits, but that, in the absence of a visitation schedule adopted by jail authorities, the schedule adopted by the trial court was "reasonable."[1] In light of *Youngblood,*

---

1. The court noted that Title 15, California Code of Regulations § 1062, setting a guideline of no fewer than two weekly visits totaling at least one hour, did not apply to the Type I city jail facility. In 1991 the section was amended to provide visitation guidelines for Type I facility inmates that were different from those set by the *Youngblood* trial court.

the issue in this case remains the same—whether the new jail visitation schedule is constitutionally reasonable—or, more accurately, whether it violates any prohibition of the Constitution.

Although the standards adopted by the United Nations Economic and Social Counsel are of no binding legal effect, this court finds no action by the County inconsistent with those guidelines. Rule 37 of those standards provides prisoners should be allowed visits with family and friends at regular intervals, and the County meets that standard.

The County has shown that the visitation schedule change was made after careful study of visiting practices, capacity, and available supervisory personnel. Jail officials have made a considered choice regarding scheduling, in the face of under-use of some visiting times, budget limits, and security requirements for assigning personnel elsewhere. They have not exaggerated their response to the situation. The new schedule complies with the guideline set by Title 15, California Code of Regulations, § 1062,[2] is in accord with contemporary standards of decency, and does not violate any prohibition of the Constitution. As a matter of policy, a larger visitation schedule is probably desirable. But, other conflicting policy needs exist. This court will not attempt to make policy choices that are the County's to make. The court will leave the management of the jail to its professional managers, absent a constitutional violation. The schedule established here is not a Constitutional violation.

2. *Access by counsel's staff.*

 An ancillary issue raised by plaintiffs is access of plaintiffs' counsel's staff to plaintiffs for interviews and evidence-gathering. Plaintiffs have shown that their counsel's staff is delayed in interviewing plaintiffs until a "background check" is done on them, and that such checks apparently must be re-done every year. However, these "checks" are apparently no dif-

ferent from access requirements existing in the past, and can apparently be done before the need arises to visit prisoners.

There has been no showing that the requirement of background checks is substantially interfering with any plaintiffs' right to counsel, or that the problem can't be alleviated by a staff member's early application. The County may lawfully impose access restrictions in light of legitimate penal administration interests. *Procunier v. Martinez,* 416 U.S. at 421, 94 S.Ct. at 1815. There is no showing of a constitutional impropriety.

### III. DISPOSITION

For the reasons stated above, the request for a preliminary injunction is DENIED.

pears to be a reasonable response to visitation scheduling that does not violate state law or the Constitution.

---

**2.** The court declines plaintiffs' counsel's suggestion to hold § 1062 to be an unconstitutional standard under *Youngblood.* The guideline ap-